[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties were married in Raleigh, North Carolina, on April 2, 1971. There is one minor child issue of the marriage, Mary Ann Choplin, born August 12, 1974. The plaintiff's maiden name was Bridget Maloney. Neither party has received any federal, state or local financial assistance. Both parties have lived in this state for one year before the institution of this action.
The parties have stipulated and the court has approved the stipulation that physical and legal custody of the minor child, Mary Ann, shall be with the plaintiff with reasonable rights of visitation with the defendant. The stipulation is annexed to this opinion and made part of the court's decision and order.
The marriage has broken down irretrievably with no hope of reconciliation. The cause of the breakdown appears to be a combination of circumstances. The plaintiff claims the husband has been drinking increasingly more in recent years from one or two days a week to six or seven. The defendant admits he CT Page 5563 drinks after work but denies that he does it to excess. There were, however, arguments about his drinking as well as other things like his desire to buy a boat. When the plaintiff threatened to divorce him if he bought the boat, he did not buy the boat; however, there was no resolution to the arguments with respect to the drinking nor was there any attempt by either of them to go for counseling or to make any attempt to save the marriage.
The plaintiff met Roseanne Reggiano at her place of work and both she and the defendant became friends with Roseanne. The plaintiff took a vacation in Ireland with Roseanne and the plaintiff's children. The defendant was unable to go at the time because he was starting a new job. The cost of the vacation was paid for by the plaintiff in part out of funds she received from a bonus at work and in part from their joint savings account. The parties also went to Florida with the children and Roseanne. The defendant was friendly with Roseanne as well, having gone out to dinner with her on occasion and helped her with her air conditioning unit.
The precipitating cause of the divorce was the defendant's anger at Roseanne when he found her at the house at dinner time. He accused her of being the cause of all the trouble in his marriage and swore at her. The plaintiff, hearing this, confronted him and a violent argument ensued. The plaintiff called the police, claiming the defendant assaulted her, and the defendant was arrested for disorderly conduct. He was ordered out of the house. Thereafter, the plaintiff obtained a protective order against the defendant's returning to the apartment. Within a short time thereafter, I believe it was a week, Roseanne moved in with the plaintiff in the marital apartment.
There appears to be, therefore, some substance to the defendant's belief that the relationship between his wife and Roseanne was the cause of the breakup. In the court's opinion, the problems were there. The defendant's drinking was one of them. However, the plaintiff saw an opportunity to leave the marriage and still manage by sharing her expenses with Roseanne. In that situation the court finds this to be a no fault divorce.
Both parties have been less than candid, to put it mildly, in their evidence of their finances. The plaintiff described herself as in dire straits at the time of the separation with only $80.00 in the bank. She then received, she said, a $5,000.00 grant from a charitable foundation in California within a week's time. This is difficult to believe both as to the amount and to the time frame. No documents were offered to substantiate this claim. CT Page 5564
In addition, the plaintiff repeatedly stated in her several financial affidavits that her monthly bank balance was $500.00 when in fact it was over $1,000.00 ever since the separation. (See exhibit 5.) The plaintiff also claims to owe money to Roseanne in the amount of $50.00 a week following the separation, but she could not pinpoint when or how much was repaid. (See transcript of January 23, 1991, pages 3-58.)
After the divorce was brought, the plaintiff also stopped working at one of three jobs she had before the divorce, and she cut the hours she was working at a second job to a minimal amount of time and income.
At the same time, the defendant also gave false figures in his financial affidavits with respect to his income, giving only his base pay when his overtime was substantial. He also has confined his working to less hours than he did during the marriage when he worked overtime regularly. Now his overtime is reduced, and he is free to work at a part time job except for being on call once every month or so. He has not attempted to find any part time job; thus, reducing his income to some $300.00 below what it had been previously. In this situation, the court will use only the income recited in the financial affidavits of both parties since both have the same capacity to earn more if they choose.
The net income of the plaintiff, as revealed on her last affidavit, is $585.62 less deductions of $152.59 leaving a net of $433.03. To this, however, must be added $150.00 a week which the minor daughter earns so that the total net for the plaintiff is $583.03.
The defendant's weekly net, according to the defendant's support guidelines and his affidavit of November 15, 1990, is $489.60. Adding his net to the plaintiff's net gives a total of $1,072.63 for which the support guidelines indicate $290.00 is the appropriate figure for a child of 16 or 17. The defendant's share in this support is $132.00 or 44.355 per cent of the total and the plaintiff's share is $158.00 or 54.355 per cent of the total.
The new guidelines provide no figures with respect to alimony or spousal support and leave it entirely up to the discretion of the court. (See Child Support Guidelines of 1991.) In this case it appears that the plaintiff has managed very well since the separation with her bank balance of $1,000.00 or more each month, and she also has a savings plan in which she has over $3,000.00 in the Greenwich Times where she works. She also has maintained similar living standards to what CT Page 5565 existed before the divorce by sharing her apartment with Roseanne Reggiano, who shares at least the expense of the rent.
It appears the plaintiff has little need for additional income to maintain her style of living.
The defendant, on the other hand, while not revealing to the court just what his expenditures are because he only pays certain bills by check and the rest by cash, would appear to have less income than the plaintiff.
There appear to be no assets of the parties except for a 1988 Honda which belongs to the plaintiff and a 1984 Lincoln Continental which belongs to the defendant. Both have savings or retirement plans although neither gave the value thereof in their affidavits. The marital home is a rental apartment now leased to the plaintiff and Roseanne Reggiano for 1991 to 1992. (See exhibit C.)
There was also testimony with respect to a piece of property in Florida which the parties purchased with the use of a credit card when they were on vacation in Florida. The evidence indicated that the defendant, during the pendency of the divorce, had given up any interest either party had in that property and, in effect, forfeited whatever they had paid. He lists the credit card which was used as a liability on his affidavit, and since he did not have the consent of the plaintiff at the time that he gave up their interests in the property, it would appear that he should be responsible for whatever remaining debt there is.
In addition, there was controversy over the unreimbursed part of medical bills which the plaintiff paid while the divorce was pending. However, she never did advise the defendant of the bills nor even ask him to pay it. It may be that they would be covered by his insurance policy were they submitted by her to him and by him to the company. It would appear that those bills are really the plaintiff's responsibility unless the defendant's insurance company will cover them.
There is an arrearage in the amount of $1,391.00 found by Judge Coppeto in November, 1990 and an additional amount thereafter. The plaintiff has asked that the defendant pay the total arrearage now, and the defendant has asked that he be given six months to do so. Since, however, he has been given much more than six months to do so, it seems to the court that he should pay this up within sixty (60) days, and the court will order that. CT Page 5566
This is a case in which the court expenses and the counsel fees far exceed, in the court's opinion, the financial ability of either party.
The plaintiff has asked that she be restored to her maiden name of Bridget Maloney, and the court will so order.
Having considered all of the factors of 46b-81 of the Connecticut General Statutes, the court makes the following findings and orders:
1. Both parties have resided in this state for at least one year prior to the institution of this action; therefore, the court has jurisdiction.
2. The parties have been married since November, 1971 and the marriage has broken down irretrievably and is hereby dissolved.
3. The cause of the breakdown appears to be the fault of both parties and not of any one party and, consequently, this is a no fault divorce.
4. There is one child issue of the marriage born August 12, 1974, Mary Ann Choplin.
5. The parties have stipulated that custody of Mary Ann shall be given to the plaintiff with reasonable visitation to the defendant, and the court finds the stipulation to be in the best interest of the child and, therefore, orders it as part of the judgment of this court and it is appended hereto and made a part hereof.
6. The child support guidelines have been set forth in the body of the opinion, and in accordance with them, the court will order the defendant to pay child support in the amount of $132.00 per week to the plaintiff beginning immediately following the rendition of this judgment. In addition, the arrears in the pendente lite orders which have been found by Judge Coppeto and any additional arrears currently due which have accrued since then shall be paid by the defendant within sixty (60) days of the judgment of this court. The defendant is also ordered to send the support payments by mail and not by personal delivery to the plaintiff's home.
7. The plaintiff shall pay the defendant $1.00 a year alimony and the defendant shall pay the plaintiff $1.00 a year alimony, in each case until the recipient dies, cohabits or remarries. CT Page 5567
8. The unreimbursed medical expenses of the child, Mary Ann, shall be shared equally by the parties and each shall use his or her insurance ce first before the payment of any expenses unreimbursed from one party's insurance. 9. The Florida time share property having been forfeited by the defendant shall be his responsibility and any remaining liability on the credit card or otherwise for that property shall be the defendant's, and he shall indemnify and hold the plaintiff harmless with respect to any debt pertaining to that piece of property.
10. The plaintiff may keep the Honda which is presently in her possession, and the defendant may keep the Lincoln Continental which is presently in his possession, and each shall hold the other harmless with respect to the outstanding balance on the car which that person owns.
11. Each party is responsible for his or her liabilities as listed on his or her financial affidavit.
12. Each party shall be responsible for his or her own attorney's fees.
13. The plaintiff's maiden name of Bridget Maloney is restored.
14. A wage execution shall issue.
MARGARET C. DRISCOLL STATE TRIAL REFEREE